J. Andrew Rahl, Jr.
Andrea J. Pincus
**ANDERSON KILL & OLICK, P.C.**
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 278-1000
Facsimile:  (212) 278-1733
arahl@andersonkill.com
apincus@andersonkill.com

Russell L. Munsch
Texas Bar No. 14671500
E. Lee Morris
Texas Bar No. 00788079
Deborah M. Perry
Texas Bar No. 24002755
**MUNSCH HARDT KOPF & HARR, P.C.**
1445 Ross Avenue, Suite 4000
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
rmunsch@munsch.com
lmorris@munsch.com

***ATTORNEYS FOR OFFICIAL COMMITTEE OF UNSECURED CREDITORS***

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| AVADO BRANDS, INC. et al., | § | Case No. 04-31555 |
| | § | |
| Debtors. | § | Jointly Administered |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a) AND 328(a) AND FED R. BANKR. P. 2014(a) AUTHORIZING EMPLOYMENT AND RETENTION OF MILLER BUCKFIRE LEWIS YING & CO., LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER TO THE DEBTORS**

To the Honorable Steven A. Felsenthal, U.S. Bankruptcy Judge:

The Official Committee of Unsecured Creditors (the "Committee") of

Avado Brands, Inc., *et al.,* appointed in the cases of the above-captioned debtors and

debtors-in-possession (collectively, the "Debtors") hereby objects to Debtors'

Application For Order Under 11 U.S.C. §§ 327(A) And 328(A) And Fed R. Bankr. P.

2014(A) Authorizing Employment And Retention Of Miller Buckfire Lewis Ying & Co.,

LLC ("Miller Buckfire") As Financial Advisor And Investment Banker To The Debtors (the

"Miller Buckfire Application"), and respectfully states as follows:

NYDOCS1-724271.1

**SUMMARY OF OBJECTION**

1.      As is set forth in greater detail below, the Miller Buckfire Application is an improper and premature attempt by the Debtors to "lock in" a financial advisor today in case of a possible, undefined, future need for certain advisory services.  The immediate excessive, and unnecessary costs to the estate and its creditors of such retention must preclude its approval.

2.      First, the Debtors' application to retain Miller Buckfire should be denied as the Debtors have not demonstrated a necessity at the present time for the services of a financial advisor and investment banker, as distinct from and in addition to the proposed restructuring services of AP Services LLC ("Alix").  It is altogether premature and wasteful for the Debtors to retain and pay Miller Buckfire $100,000 each month and to commit to a $1.5 million Restructuring Transaction Fee (essentially a success fee, as described in the Miller Buckfire Application), and potentially hundreds of thousands of dollars of additional transaction fees (over and above the $1.5 million Restructuring Transaction Fee) at this early juncture of the case without having established the present need for such services.

3.      Second, the Debtors' application to retain and pay Miller Buckfire, at a minimum, should be subject to review by this Court pursuant to 11 U.S.C. §330, not 11 U.S.C. §328, especially in light of (i) the indeterminate scope of services which Miller Buckfire proposes to perform; (ii) the possibility that few or none of these services may in fact be required, (iii) the likelihood of duplication of services by Miller Buckfire and Alix, and the limited added value of the proposed dual retentions; and, (iv) the additional cost to the estate and the estate's creditors of the proposed success fee in this case for

Alix, which itself has subjected its compensation to review under the reasonableness standard of Section 330 of the Bankruptcy Code.

## RELEVANT FACTS

4.      On February 4 and 5, 2004 (collectively the "Petition Date"), the Debtors each filed a voluntary petition for relief under Chapter 11 of Bankruptcy Code, initiating their respective bankruptcy cases with this Court.  By order entered on February 6, 2004, the cases have been procedurally consolidated for joint administration under Case No. 04-31555 (the "Bankruptcy Case").

5.      The Debtors have continued in possession of their respective properties and are operating and managing their respective businesses and assets, as debtors–in–possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6.      By application dated February 4, 2004 ("Miller Buckfire Application"), Debtors sought the retention of Miller Buckfire as financial advisor and investment banker as of the Petition Date, pursuant to 11 U.S.C. §§ 327(A) and 328(A), Fed R. Bankr. P. 2014(A), and the terms of an engagement letter dated January 26, 2004, between Avado Brands, Inc. and Miller Buckfire (the "Miller Buckfire Engagement Letter"), annexed thereto as Exhibit C.

7.      The Committee was recently informed by the Debtors that thereafter, Miller Buckfire modified the terms of its monthly compensation through an agreement with Avado Brands, Inc. ("Miller Buckfire Modified Agreement").  A writing containing the terms of the Miller Buckfire Modified Agreement has not been filed with the Court or served on the Committee but a summary of these terms, as presented by the Debtors to the Committee, is provided below.

8.      By Motion dated February 4, 2004, Debtors also sought, pursuant to 11 U.S.C. §363, entry of (I) an interim order authorizing the employment of Alix as crisis managers to the Debtors and thereby designating Kevin J. Leary as Interim Chief Executive Officer and Michael Feder as Chief Restructuring Officer of the Debtors and scheduling a final hearing on the proposed Employment Agreement, and (II) a final order authorizing same,  ("Alix Application"), pursuant to the terms of an engagement letter annexed thereto as Exhibit A ("APS Engagement"), dated November 9, 2003, between Avado Brands, Inc. and APS, as amended by letter dated January 26, 2004 ("Alix First Amendment"),  between Avado Brands, Inc. and Alix, (together, the "Alix Engagement Letter").

9.      The terms of the Alix compensation pursuant to the Alix Engagement Letter were further modified by the Second Amended Engagement Letter dated February 17, 2004 ("Alix Second Amendment"), between Avado Brands, Inc. and Alix.  Notice of the Alix Second Amendment was filed with the Court and served on the Committee by Alix on or about March 18, 2004.

10.      Pursuant to the Miller Buckfire Engagement Letter, Miller Buckfire Modified Agreement and Miller Buckfire Application, as well as the Alix Engagement Letter and Alix Application, both Miller Buckfire and Alix propose to provide the following principal services to the Debtors, albeit under different nomenclature:

| Alix | Miller Buckfire |
|---|---|
| • Develop and implement a revised business plan and related forecasts; and, oversee financial performance | • Familiarize itself with the business, operations, properties, financial condition and prospects of the Debtors |

- Assist in identifying improvements in cash management controls and liquidity generating initiatives

- Implement a strategy to resolve Debtors' liquidity and capital structure problems

- Assist in negotiations with stakeholders and their representatives, banks, note holders and their advisors, and suppliers

- Participate in negotiations with entities or groups affected by the Plan;

- Assist Debtors in conducting a restructuring to maximize value for stakeholders

- Provide services necessary to enable the Debtors to maximize the value of their estates and reorganize successfully

- Evaluate and implement strategic and tactical options through the restructuring process.

- Advise the Debtors with development of a Restructuring plan.

See, Miller Buckfire Application pp. 4-8, Miller Buckfire Engagement Letter, Alix Application pp. 5-6 and 10-11, and Alix Engagement Letter.

11.     While Miller Buckfire proposes to provide certain services and participate in certain transactions typical of an investment banker in connection with implementing a plan of reorganization  (i.e., structuring and marketing potential sales, obtaining financing services including exit financing, and issuance of new securities), the Debtors have not established a need at this point for such services.  This case is still at an early stage.  The Debtors have not yet completed a business plan for their current operations and are not in a position to propose or implement a plan of reorganization.

12.     Pursuant to the Miller Buckfire Engagement Letter and the Miller Buckfire Modified Agreement, Miller Buckfire would receive both (a) a Monthly Advisory Fee of $100,000 regardless of the volume or scope of work provided in any such month, and reimbursement on a monthly basis for its travel and other expenses, plus (b) a Restructuring Transaction Fee of $1.5 million payable upon confirmation of a

restructuring, against which the first 50% of each Monthly Advisory Fee (excluding the first month's fee) are to be credited, plus (c) a Sale Transaction Fee upon the consummation of a sale and payable at the closing thereof, calculated at 2.00% of the Aggregate Consideration up to $50 million, plus 1.50% of Aggregate Consideration between $50 million and $150 million, plus 1.25% of the Aggregate Consideration in excess of $150 million, plus (d) a percentage of any Financing ("Financing Fee") received by Debtors upon consummation of such financing, subject to certain terms, conditions and credits as set forth in the Miller Buckfire Engagement Letter.  The Restructuring Transaction Fee, is referred to herein as the "Success Fee."  The Sale Transaction Fee and  Financing Fee are together referred to as Additional Compensation.

13.    The Debtors seek approval of the Miller Buckfire fee structure in its entirety pursuant to section 328(a) of the Bankruptcy Code (11 U.S.C.§ 328(a)), which severely limits the Court's ability to review the reasonableness of Miller Buckfire's monthly fees, Success Fee and Additional Compensation as compared to actual services performed by the end of Miller Buckfire's employment in the Bankruptcy Case.

14.    Pursuant to the Alix Engagement Letter and Second Amended Engagement Letter, for the above services Alix would receive both (a) on a monthly basis the lesser of (i) 80% of their billed hourly rates of up to $670/hour  for the professionals and paraprofessionals or (ii) $350,000, with the unpaid amount being deferred as an administrative expense until the end of the bankruptcy case (the "Alix Deferral") and reimbursement of all expenses, plus (b) a success fee of $2.675 million (the "Alix Success Fee") earned and payable upon the confirmation of a plan of

reorganization.  The Alix Success Fee as proposed shall be reduced by the sum of (a)

$75,000 for each month starting with the invoice for the fourth month of the case (May

2004) and continuing through the twelfth month of the case (January 2005) and (b)

provided the Alix Deferral has been paid to Alix, the sum of (i) 50% of the Alix Deferral

for months one through six (February through July), and (ii) 100% of the Alix Deferral for

months seven and beyond.

15.     In contrast to the Miller Buckfire Application, the Alix Application

and proposed final order approving the Alix retention provides for any success fee for

Alix  to be "determined based on a reasonableness standard after application and notice

to all parties-in-interest and upon hearing before this Court," the standard articulated in

section 330(a) of the Bankruptcy Code. See, 11 U.S.C. § 330(a).

16.     On February 8, 2004  this Court entered an Interim Order

authorizing on an interim basis the employment and retention of Miller Buckfire ("Miller

Buckfire Interim Order").

17.     On the same date, the Court also entered an Interim Order

authorizing the employment of Alix, and designating Kevin J. Leary as Interim Chief

Executive Officer and Michael Feder as Chief Restructuring Officer of the Debtors ("Alix

Interim Order").

18.     On February 12, 2004, the United States Trustee appointed the

Committee.

19.     The Committee has eleven members, consisting of four senior

noteholders of Avado Brands, Inc., their indenture trustee, one noteholder of Avado

Brands, Inc., senior subordinated notes,  its indenture trustee,  the indenture trustee for certain convertible securities called TECONS,  and three trade creditors.

20.     On February 12, 2004, the Committee selected Anderson Kill & Olick, P.C. ("Anderson Kill") and Munsch Hardt Kopf & Harr, P.C. ("Munch Hardt", and collectively with Anderson Kill, "Committee Counsel") to serve as counsel for the Committee in all matters related to the Bankruptcy Case.  On February 23, 2004, this Court entered an Interim Order authorizing the employment of Committee Counsel.

21.     The date for the final hearing with respect to the respective underlying applications was scheduled for March 23, 2004, and adjourned with the consent of the Committee to April 13, 2004.

## **OBJECTION**

22.     The Committee objects to the retention of Miller Buckfire on the grounds that: (i) the scope and nature of services for which Debtors ostensibly seek to retain Miller Buckfire  -- at a minimum of $100,000 monthly plus a $1.5 million Success Fee -- are not necessary at this time and may not be necessary in the future; and, (ii) it is unreasonable to subject the entire compensation structure for the proposed Miller Buckfire services to the narrow parameters of review pursuant to section 328(a) of the Bankruptcy Code in light of the likely redundancy of services between Miller Buckfire and Alix, the limited added value to the estate of the proposed retention, and the additional cost to the estate of a proposed success fee for the professional services of Alix as crisis manager and CRO.

23.     In evaluating the proposed retention of professionals pursuant to Section 327 of the Bankruptcy Code, a bankruptcy court has broad discretionary power

to analyze "the particular facts and circumstances surrounding each case" before making a decision. Pryor v. Ready & Pontisakos (In re Vouzianas), 259 F.3d 103, 107 (2d Cir. 2001); In re Seeburgh Products Corp., 215 B.R. 175, 178 (Bankr. N.D. Ill. 1997). Section 327 is designed to insure in advance of a professional's employment "both that the employment is necessary to the estate and that the professional is able to serve in the best interest of the estate." In re Wang Laboratories, Inc., 143 B.R. 794, 794 (Bankr. D. Mass. 1992) (citation omitted). The ultimate determination of whether professional representation is in the best interest of the estate falls within the sound discretion of the bankruptcy court. Id. Considerations that are relevant to the court's analysis include "the protection of the interests of the bankruptcy estate and its creditors, and the efficient, expeditious, and economical resolution of the bankruptcy proceeding." In re Vouzianas, 259 F.3d at 107 (citations omitted). For the following reasons, the proposed retention of Miller Buckfire fails to satisfy these relevant criteria.

### A. Miller Buckfire's Proposed Retention is Unnecessary and Premature at this Time

24. In reviewing the application for the retention of professionals in a bankruptcy case, a court must consider whether the proposed services are duplicative and/or unnecessary. In re Wang, 143 B.R. at 794; In re Genlime Group, L.P., 167 B.R. 449, 451 (Bankr. N.D. Ohio 1994); In re Cummins Utility, L.P., 279 B.R. 195, 204 (Bankr. N.D. Tex. 2002) (noting that, pursuant to the standard applied under section 327, the court must determine whether the services performed are duplicative or unnecessary).

25. Where the expertise of the proposed professional is within the realm of other professionals that have been already retained by the debtor, the

NYDOCS1-724271.1                                                    - 9 -

proposed professionals' retention application should be denied.  See, e.g., In re Wang, 143 B.R. at 795 ("The collective expertise of Debtor's accountants and legal counsel is clearly substantial and certainly encompasses the categories of services listed by [the proposed financial advisor]. . . .  Debtors can not envelop themselves with duplicative advisors at the expense of the estate.  'A party's request for independent professional services should be denied if such services are clearly duplicative and wasteful.'") (internal citations and quotations omitted); In re Genlime Group, L.P., 167 B.R. 449 (Bankr. N.D. Ohio 1994) (denying financial advisors' retention application where terms of employment apparently duplicated the duties of the debtor's counsel); see also In re Gillett Holdings, Inc., 137 B.R. 475, 481 (Bankr. D. Colo., 1992)(denying in substantial part investment banker's fee request under § 330 of the Bankruptcy Code and stating that "a debtor's estate should not bear the costs of services which were either excessive or duplicative of the efforts of other professionals.")

26.    As set forth in the above table comparing the proposed services of Miller Buckfire and Alix, the terms of Miller Buckfire's proposed retention substantially mirror those of Alix, and their respective qualifications are by the Debtors' own assertions equally suitable to the tasks set forth in their respective applications.

27.    Moreover, Alix commenced working with Debtors several months prior to the Petition Date, and prior to Miller Buckfire's initial contact with the Debtors, with Alix expressly retained in part for the purpose of assisting the Debtors with analysis and preparations in anticipation of a potential restructuring under the protection of Chapter 11 of the Bankruptcy Code.  As an "internationally recognized restructuring and turnaround advisory and consulting firm"  (see Declaration of Bettina Whyte dated

February 4, 2004,  ¶1, in support of Alix Application),  Alix admits no deficiency in its expertise and arguably is more than qualified to provide the entirety of professional services required to maximize value of the Debtors' estates in the course of the Bankruptcy Case, with the limited exception perhaps of certain valuation services best performed by an independent entity.

28.     Debtors also seek to engage Miller Buckfire to provide substantially the same services to Debtors as Alix, at an additional monthly cost of $100,000, irrespective of any demonstrated, added value to the estate.  Alternatively, Debtors may actually seek to engage Miller Buckfire at a later date for certain limited services not within the ordinary scope of the proposed Alix services (but for which Alix is arguably qualified), such as valuation, asset sales advisory, and/or private equity and debt placement.  See Miller Buckfire Application ¶15.  These services do not appear to be necessary at this early date, yet Debtors propose to pay Miller Buckfire the monthly retainer of $100,000 as of the Petition Date and a Success Fee of $1.5 million due upon completion of the Bankruptcy case, regardless of whether there is any work, original or otherwise, for Miller Buckfire to perform either either at this time or in the future.

29.     Further, while Miller Buckfire may eventually provide certain distinct services to the Debtors in connection with a plan of reorganization, it is simply too early to determine if and to what extent the Debtors will need any of the potential plan-related services from Miller Buckfire or an other financial advisor.  In light of the speculative nature of their mandate, the payment to Miller Buckfire of fees at this juncture of the case appears designed simply to "lock in" Miller Buckfire as Debtors' financial advisor should the Debtors eventually determine at some future time that they in fact require

certain services in connection with a plan of reorganization or perhaps sales of assets, and not for any present benefit to the Debtors, the estate or their creditors.

30.    Moreover, even if the Debtors here could gain some potential benefit from the proposed retention of Miller Buckfire in addition to Alix (to the extent that certain of the proposed Miller Buckfire services would not be entirely redundant), the dual retentions should nevertheless be denied since such benefit would be offset by the tremendous expense to the Debtors' estate of paying two sets of financial advisors approximately $450,000  a month (exclusive of success fees), to perform services that Alix could provide alone.  Clearly,  the Debtors could retain Alix as a single qualified professional to perform the majority of the proposed services herein and later retain, if and  when necessary, another professional for specific expertise relating to certain valuation, financing services and sales transactions, subject to a fixed price tied to the value of the limited expertise and narrow scope of the additional retention.

**B.  The Debtors' Application To Retain And Pay Miller Buckfire, If Granted By The Court, Should Be Subject To Review By This Court Pursuant To 11 U.S.C. §330 And Not 11 U.S.C. §328**

31.    Notwithstanding the forgoing, in the event the Court approves the Miller Buckfire Application, Miller Buckfire's entire fee structure should be subject to review by this Court pursuant to the parameters set forth in 11 U.S.C. §330(a) and not 11 U.S.C. §328(a) as requested by Miller Buckfire and the Debtors.

32.    It is unreasonable to subject Miller Buckfire's  proposed compensation structure to the narrow parameters of review pursuant to section 328(a), which provides in pertinent part that a court may only  "allow compensation different from the compensation provided under such terms and conditions after the conclusion

of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. §328(a); see, In re Nat'l Gypsum Co. (Donaldson Lufkin & Jenrette Secs. Corp. v. Nat'l Gypsum Co.), 123 F.3d 861 (5th Cir. 1997).

33.    By contrast, section 330(a)(1)(A)  authorizes the Court, after the requisite notice and hearing, to review compensation sought by a professional person retained under section 327 of the Bankruptcy Code and award "reasonable compensation for actual, necessary services rendered[.]"  11 U.S.C. 330(a)(1)(A). Section 330(a)(3) instructs the Court to review all relevant factors in determining the amount of reasonable compensation to be awarded and lists certain factors, including:

- the time spent on such services;
- the rates charged for such services;
- whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward completion of, a case under this title;
- whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and
- whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in other cases under this title.

11 U.S.C. §330(a)(3)(A)-((E).  Further, section 330(a)(4) prohibits the award of compensation for "(i) unnecessary duplication of services; or (ii) services that were not (I) reasonably likely to benefit the debtor's estate or (II) necessary to the administration of the case."  11 U.S.C. §330(a)(4).

34.    Clearly, the questionable necessity of the Miller Buckfire retention now or in the future, the speculative nature of the scope, duration and comparable costs

of the proposed services, the potential for unnecessary duplication of services by Debtors' professionals, and, the failure to link fees (including monthly fees, Success Fee, and Additional Compensation) to any specific services or beneficial results in the Bankruptcy Case are all developments which can be anticipated now and which make the terms and conditions of the proposed retention improvident at this time.  The Committee submits that permitting Miller Buckfire's proposed compensation pursuant to section 328(a) in light of these factors invites inefficiency and creates the potential for abuse which runs counter to the Bankruptcy Code's objective of maximizing value for creditors.

35.    For example, it can be anticipated now that Miller Buckfire may well be called upon several months from now to perform a valuation and nothing more in connection with a plan of reorganization.  Under the Miller Buckfire Application, Miller Buckfire would none-the-less be entitled to its monthly $100,000 fee for each month of its retention as well as the $1.5 million Success Fee (less deductions discussed above) for services which arguably could have been provided for a fraction of the cost.  Pursuant to section 328(a) and without the review authorized by section 330(a), parties-in-interest, who then object to the excessive fees for the limited actual work performed essentially, would be without remedy.

36.    This case is not large, the assets of the Debtors are limited as is the liquidity under the Debtors' DIP financing is limited, and the issues confronting the Debtors in restructuring their two restaurant chains are not complex.  The total proposed fees sought by Miller Buckfire are out of proportion with the needs of the Debtors and the best interests of the Debtors' estates and creditors, and have been proposed

pursuant to section 328(a) of the Bankruptcy Code in total disregard for the economic realities of the Bankruptcy Case.

37.    The chart below reflects the total compensation that would be paid to Miller Buckfire and Alix assuming the Bankruptcy Case lasts for either 6 months or 12 months, respectively, assuming a monthly Alix fee of $400,000, and further assuming that Miller Buckfire neither performs services in connection with sales or financing nor seeks any Additional Compensation in connection therewith.

| | | **6 Months** | |
| | **Alix** | **Miller Buckfire** | **Total** |
| Monthly Fees | 2,400,000 | 600,000 | 3,000,000 |
| Net Restructuring Fee | 2,185,000 | 1,250,000 | 3,435,000 |
| Total Fee | 4,585,000 | 1,850,000 | 6,435,000 |
| | | **12 Months** | |
| | **Alix** | **Miller Buckfire** | **Total** |
| Monthly Fees | 4,800,000 | 1,200,000 | 6,000,000 |
| Net Restructuring Fee | 1,255,000 | 950,000 | 2,205,000 |
| Total Fee Without Exit Financing | 6,055,000 | 2,150,000 | 8,205,000 |

38.    If this retention is approved by this Court in addition to the retention of Alix, the total fees paid by the Debtors to their financial advisors clearly will be excessive given the size of the Company, complexity of the case and services required. The ability for the Court and parties in interest to pursue a meaningful review  of Miller Buckfire's compensation pursuant to section 330(a) (as the Court may with respect to the Alix retention) is essential to the efficient administration of this case.

39.    Additionally,  the proposed Miller Buckfire Success Fee in particular should be closely tied to the actual performance of services by Miller Buckfire,  a

successful outcome in the Bankruptcy Case, and recovery received by the Unsecured

Creditors in the Bankruptcy Case.  Because it is not, the Miller Buckfire Application

should be denied.  Further, a success fee for any retained professional should only be

granted at the end of the case, pursuant to Section 330(a) of the Bankruptcy Code, and

only after a review by the Court of the actual work performed and results achieved.

40.     Success fees only can be awarded, if at all, at the end of the case

after the Court has had an opportunity to review the work performed and the results

achieved.  In re Gillett Holdings, Inc., 137 B.R. 452, 459 (Bankr. D. Colo. 1991); see

also In re Intelogic Trace, Inc., 188 B.R. 557, 560 (Bankr. W.D. Tex. 1995) ("[w]ith

success fees especially, we are constrained to apply a 'hindsight' approach, not bound

by whatever arrangements might have been worked out prior to retention – and

especially not bound by arrangements made prior to filing").

41.     The Committee submits that the  "success" of Miller Buckfire in this

case must be measured by the criteria of section 330(a) of the Bankruptcy Code, and

further should be tied to the size and timing of the recovery to the creditors.  Under the

Miller Buckfire Engagement Letter and Miller Buckfire Modified Agreement, Miller

Buckfire would receive a $1.5 million Success Fee, in addition to its monthly fees, less

certain deductions as described earlier, regardless of the benefit to the estate of its

services, the nature of the services actually performed, the necessity of that work to the

administration or resolution of the case, the amount of time spent on such services, the

unneccessary duplication of services by Miller Buckfire, or the amount of creditors'

recoveries.

42.     Accordingly, the proposed Success Fee is to be paid whether or not there is, in fact, a success.  This separation of the "fee" from the "success" must be considered, per se, unreasonable.  See In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 27 (Bankr. S.D.N.Y. 1991); see also In re Interlogic Trace, Inc., 188 B.R. at 561 (holding success fees "are designed to reward extraordinary effort, not simply to repay one for the job one was hired to do in the first place"); In re Gillett Holdings, Inc., 137 B.R. at 459 (stating that a professional may seek a success fee in an appropriate case, but only if it can show that the fee was earned).

43.     Accordingly, if this Court were to approve the Miller Buckfire retention over this objection, and allow Miller Buckfire's proposed monthly compensation, proposed Success Fee, and proposed Additional Compensation, it should only do so if the fees are linked to the success of the Debtors in restructuring and recoveries to the creditors, are applied for at the end of the case, and, are subject to the Court's discretion under Bankruptcy Code Section 330(a).

WHEREFORE, PREMISES CONSIDERED, the Committee respectfully requests that the Court (i) deny the Debtors' application to retain Miller Buckfire on the terms set forth in the Miller Buckfire Application and  as set forth herein and, alternatively, (ii)  in the event the Court grants the Debtors' application to retain Miller Buckfire over the Committee's objection, expressly subject Miller Buckfire's compensation (including all monthly fees, Success Fee and Additional Compensation) to review by this Court pursuant to the reasonableness standards of 11 U.S.C. §330(a) and, (iii) grant the Committee all such other and further relief as to which it has shown itself to be justly entitled.

DATED: April 8, 2004

Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**


By: __/s/ Deborah M. Perry_____
Russell L. Munsch
Texas Bar No. 14671500
E. Lee Morris
Texas Bar No. 00788079
Deborah M. Perry
Texas Bar No. 24002755
1445 Ross Avenue, Suite 4000
Dallas, Texas 75202-2790
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

- and -

**ANDERSON KILL & OLICK, P.C.**
J. Andrew Rahl, Jr.
Andrea Pincus
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 278-1000
Facsimile: (214) 278-1733

THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF AVADO
BRANDS, INC.

NYDOCS1-724271.1                                  - 18 -

CERTIFICATE OF SERVICE

This is to certify that on the 8th day of April, 2004, a true and correct copy of the foregoing pleading was served by U.S. first class mail, postage prepaid, on each of the parties listed on the attached Limited Service List and via facsimile on the persons listed below:

**Debtors' Counsel:**
George N. Panagakis
Timothy P. Olson
Skadden Arps Slate Meagher
& Flom LLP
333 W. Wacker Drive, Suite 2100
Chicago, IL  60606-1285
Fax: 312-407-0411

      and

Deborah D. Williamson
Carol E. Jendrzey
Thomas Rice
Cox & Smith Incorporated
112 E. Pecan, Suite 1800
San Antonio, TX  78205
Fax:  210-226-8395

/s/ Deborah M. Perry
Deborah M. Perry

Kevin J. Leary
Louis J. Profumo
Avado Brands, Inc.
Hancock at Washington
Madison, GA  30650

Michael A. Feder
Jon Orr
AlixPartners LLP
1999 Avenue of the Stars, Suite 2000
Los Angeles, CA  90067

Andrew Rahl, Jr.
Andrea Pincus
Anderson Kill & Olick, PC
1251 Avenue of the Americas
New York, NY  10020

Glenn E. Kid
Curtis 1000, Inc.
1725 Breckinridge Parkway
Duluth, GA  30096

James Shanahan
Pacholder Associates, Inc.
8044 Montgomery Road, Ste 480
Cincinnati, OH  45236

Ron Painter
Suntrust Bank, Atlanta
25 Park Place – 24th Floor
Atlanta, GA  30303

Cliff Booth
Briargrove/Tollway Ltd.
1122 Jackson Street, Suite 616
Dallas, TX  75202

David Warren
Poyner & Spruill LLP
130 S. Franklin St.
P.O. Box 353
Rocky Mount, NC  27802-0353

George N. Panagakis
Timothy P. Olson
Skadden Arps Slate Meagher &
Flom
333 W. Wacker Drive, Suite 2100
Chicago, IL  60606-1285

Durc Savini
Miller Buckfire Lewis Ying & Co.
250 Park Avenue, 19th Floor
New York, NY  10177

Russell L. Munsch
E. Lee Morris
Munsch Hardt Kopf & Harr, P.C.
1445 Ross Avenue, Suite 4000
Dallas, TX  75202-2790

Carl E. Mabry
Delaware Investments
2005 Market Street, 39th Floor
Philadelphia, PA  19103

John Dubois
18495 S. Dixie Highway
PMB 107
Miami, FL  33157

Staci Marino
Wachovia Bank
401 S. Tryon St.
Mail Code NC1179
Charlotte, NC  28288

George F. McElreath
United States Trustee
1100 Commerce Street
Number 9C60
Dallas, Texas  75242

Robert Hockett
DDJ Capital Management
141 Linden Street, Suite S-4
Wellesley, MA  02842

Deborah D. Williamson
Carol E. Jendrzey
Thomas Rice
Cox & Smith Incorporated
112 E. Pecan, Suite 1800
San Antonio, TX  78205

Kathy Gerber
Bankruptcy Services, LLC
757 Third Avenue, 3rd Floor
New York, NY  10177

Eric Johnson
40/86 Advisors Inc.
11825 N. Pennsylvania St.
Carmel, IN  46032

Bruce Ferguson
Summit Investment Partners
312 Elm Street, Suite 1212
Cincinnati, OH  45202

William Kaye
Coca-Cola USA
31 Rose Lane
East Rockaway, NY  11518

Daniel R. Fisher
Law Debenture Trust
Company of New York
767 Third Avenue – 31st Floor
New York, NY  10017

Attn:  Ch. 11 Bankruptcy Division
Securities and Exchange Commission
801 Cherry Street – 19th Floor
Fort Worth, TX  76102

Attn:  Portfolio Manager
Hilco Capital LP
One Northbrook Place
5 Revere Drive, Suite 202
Northbrook, IL  60062

Frederic Ragucci
Schulte Roth & Zabel LLP
919 Third Avenue
New York, NY  10022

David L. Pollack/Jeffery Meyers
Dean C. Waldt
Ballard Spahr Andrews & Ingersoll,
LLP
1735 Market Street
51st Floor – Mellon Bank Center

Jon D. Schneider
Goodwin Procter
Exchange Place
53 State Street
Boston, MA  02109

Kevin Treacy
Drawbridge Special
Opportunities Fund LP
1251 Avenue of the Americas
16th Floor
New York, NY  10019

Lee A. Collins
Trent L.  Rosenthal
Boyar & Miller PC
4265 San Felipe – Suite 1200
Houston, TX  77027

John T. Vian
Smith, Gambrell & Russell LLP
1230 Peachtree St., N.E.
Suite 3100
Atlanta, GA  30309

Glenn B. Rose
Harwell, Howard, Hyne, Gabbert
& Manner PC
315 Deaderick St. – Suite 1800
Nashville, TN  37238

Daniel C. Stewart/Paul E. Heath
Abigail B. Willie
Vinson & Elkins L.L.P.
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, TX  75201-2975

Michael Chimitris
General Growth Management, Inc.
110 N. Wacker
Chicago, IL  60606

Thomas J. Leanse
Katten Muchin Zavis Rosenman
2029 Century Park East, Suite 2600
Los Angeles, CA  90067-3012

J. Maxwell Tucker
Eli O. Columbus
Winstead Sechrest & Minick PC
5400 Renaissance Tower
1201 Elm Street
Dallas, TX  75270

Michael D. Gordon
Briggs and Morgan, PA
80 South 8th Street
2200 IDS Center
Minneapolis, MN  55402

Nina M. Lafleur
Stutsman & Thames, PA
121 W. Forsyth Street, Suite 600
Jacksonville, FL  32202

Jenny Hyun
Weingarten Realty Management
Company
P.O. Box 924133
Houston, TX  77292-4133

Elizabeth Banda
Perdue, Brandon, Fielder Collins
& Mott LLP
P.O. Box 13430
Arlington, TX  76094-0430

Gary L. Barnhart
General Counsel's Office
301 W. High Street, Room 670
P.O. Box 475
Jefferson City, MO  65105-0475

Paul S. Magy
Matthew W. Schlegel
Kupelian Ormond & Magy, PC
25800 Northwestern Hwy, Ste 950
Southfield, MI  48075

Michelle E. Shriro
Gerard Singer Levick & Busch, PC
16200 Addison Road, Suite 140
Addison, TX  75001

Robert A. Dean
The Dean Law Firm P.C.
1870 Whitehaven Road
Post Office Box 1005
Grand Island, NY  14072

David Pettijohn
Franchise Realty Investments, Inc.
8215 Westchester Dr., Suite 500
Dallas, TX  75225

Michael Reed
McCreary, Veselka, Bragg & Allen,
PC
P.O. Box 26990
Austin, TX  26990

Elizabeth Weller
Linebarger Goggan Blair
& Sampson LLP
2323 Bryan Street, Suite 1600
Dallas, TX  75201

Andrew M. Bumbry
Shutts & Bowen LLP
300 S. Orange Avenue, Suite 1000
P.O. Box 4956
Orlando, FL  32802-4956

Ronald E. Gold
Frost Brown Todd LLC
201 East Fifth Street
2200 PNC Center
Cincinnati, OH  45202-4182

Pamela Dunlop Gates
Bruce W. Bringardner
Thompson, Coe, Cousins & Irons,
LLP
700 North Pearl Street, 25th Floor
Plaza of the Americas

M. Lucinda Motsko
The Rouse Company
10275 Little Patuxent Parkway
Columbia, MD  21044

Stephen A. Schuller
Boone, Smith, Davis, Hurst &
Dickman
100 West 5th Street
500 OneOk Plaza
Tulsa, OK 74103-4288

David Beker
Schwartz, Cooper, Greenberger & Krauss
180 N. LaSalle Street, Suite 2700
Chicago, IL  60601

Gus H. Small/Kelly S. Scarbrough
Cohen Pollock Merlin Axelrod
& Small, P.C.
3350 Riverwood Parkway, Suite 1600
Atlanta, GA  30339

Tally F. Parker, Jr.
Parker & Marks, PC
1333 Corporate Drive, Suite 209
Irving, TX  75038

William A. (Trey) Wood, III
Bracewell & Patterson, LLP
711 Louisiana Street, Suite 2900
Houston, TX  77002-2781

Beth Di-Biaso-Francis
The Travelers Insurance Company
1 Tower Square 5MN
Hartford, CT  06183-4044

Noble C. Hatfield
2220 N. Meridian Street
Indianapolis, IN  46208

John P. Dillman
Linebarger Goggan Blair & Sampson
P.O. Box 3064
Houston, TX  77253-3046

Andrea Sheehan
Law Offices of Robert E. Luna, PC
4411 N. Central Expressway
Dallas, TX  75205

Tina Niehold Moss
Pryor Cashman Sherman & Flynn LLP
410 Park Avenue
New York, NY  10022-4441

Kevin M. Newman
Menter, Rudin & Trivelpiece, PC
500 Salina St. – Suite 500
Syracuse, NY  13202

Wm. Chris Wolffarth
Johnson & Wolffarth, LLP
500 North Akard St., Suite 3960
Dallas, TX  75201-3320

Jeffrey Hall
Bankruptcy Administration
IOS Capital, Inc.
1738 Bass Road, P.O. Box 13708
Macon, GA  31208-3708

Jeffery J. Graham
Sommer Barnard Akerson Attorneys
One Indiana Square, Suite 3500
Indianapolis, IN  46204

Tony Minella
Guggenheim Partners
135 East 57th Street
New York, NY  10022

James Goldberg
TCW Group
865 South Figueroa Street, Suite 2100
Los Angeles, CA  90017

Matt Sosland
Nomura Corporate Research
and Asset Mgmt
2 World Financial Center, Bldg B
New York, NY  10281

Gary Madich
Banc One Investment Advisors
1111 Polaris Parkway, 2nd Floor
Suite 82
Columbus, OH  43271

Carl Mabry
Lincoln National Life Insurance Co.
2005 Market Street, 40th Floor
Philadelphia, PA  19103

Stuart Larsen/Peter S. Nealis
Kahn Kleinman
2600 Erieview Tower
1301 E. 9th Street
Cleveland, OH  44114-1824

Jeffery Baddeley
Baker & Hostetler LLP
1900 East Ninth Street
3200 National City Center
Cleveland, OH  44114-3485

Michelle A. Mendez
Julia A. Linares
Greenberg Traurig, LLP
13155 Noel Road – Suite 600
Dallas, TX  75240

George H. Barber
Kane, Russell, Coleman & Logan, PC
1601 Elm Street
3700 Thanksgiving Tower
Dallas, TX  75201

Rick Miller
Tim Peterson
Regiment Capital
222 Berkeley St., 12th Floor
Boston, MA  02116

Jeffrey Mann
Prudential
Two Gateway Center, 4th Floor
Newark, NJ  07102

Jeff Gary
Sunamerica Asset Mgmt. Corp.
733 3rd Avenue, 3rd Floor
New York, NY  10017

Janet Murphy
Pareto Partners
505 Park Avenue – 18th Floor
New York, NY  10022

Lloyd W Baldridge
Commissary Operations, Inc.
2629 Eugenia Avenue
Nashville, TN  37211-2118

Diane W. Sanders
Linebarger Goggan Blair & Sampson
1949 South I.H. 35
P.O. Box 17428
Austin, TX  78760

R. Brad Lamberth/Thomas H. Stewart
Lamberth & Stewart, PLLC
2840 Lincoln Plaza
500 North Akard
Dallas, TX  75201

Kevin G. Herd
Goodrich Postnikoff & Albertson LLP
777 Main Street, Suite 1360
Fort Worth, TX  76102

Robert T. Cosgrove
Burns, Wall, Smith & Mueller, PC
303 E. 17th Ave. – Suite 800
Denver, CO  80203

Robert Hahn
American General Investment Mgmt.
2727 Allen Parkway
Houston, TX  77019

Valentin Colon
Credit Suisse First Boston
11 Madison Avenue
New York, NY  10010

Stacey Lane
UBS
51 W. 52nd Street
New York, NY  10019

Tom Fuller
WestWayne, Inc.
1170 Peachtree Street, Suite 1500
Atlanta, GA  30309

Carl Lee Bon Jovi
Eaton Vance Management
255 State Street
Boston, MA  02109

Ronald M. Tucker
Simon Property Group, LP
115 West Washington Street
Indianapolis, IN 46204

James W. Deatherage
Jim Deatherage & Assoc., PC
800 West Airport Freeway
Suite 518, LB 6060
Irving, TX 75062

Christine K. Jacobson
Wooden & McLaughlin LLP
One Indiana Square, Suite 1800
Indianapolis, IN 46204

Adam Fox
Strasburger & Price, LLP
901 Main Street, Suite 4300
Dallas, TX 75202-3794

Armen Shahinian
Karen L. Gilman
Wolff & Samson PC
One Boland Drive
West Orange, NJ 07052

Susan D. Profant
c/o Manatee County Tax Collector
P.O. Box 25300
Bradenton, FL 34206-5300

Angela D. Dodd
Securities and Exchange Commission
175 West Jackson Blvd., Suite 900
Chicago, IL 60604

Michael W. Bragg
Spengler Nathanson PLL
608 Madison Ave., Suite 1000
Toledo, OH 43604-1169

Richardo I. Kilpatrick
903 N. Opdyke Road, Suite C
Auburn Hills, MI 48326

East/Rufe Snow, Ltd.
P.O. Box 83183
Richardson, TX 75083-5183

Staci J. Strong
Thompson & Knight LLP
1700 Pacific Avenue, Suite 3300
Dallas, TX 75201

Beverly H. Shideler, BS8399
Two Lincoln Centre
Oakbrook Terrace, IL 60181

Eugene J. Kottenstette
Assistant City Attorney
Municipal Operations
201 West Colfax Avenue, Dept. 1207
Denver, CO 80202-5332

Keith J. Cunningham
Pierce Atwood
One Monument Square
Portland, ME 04101

Erich N. Durlacher
Burr & Forman LLP
600 W. Peachtree St., N.W.
Suite 1200, One Georgia Center
Atlanta, GA 30308

NYDOCS1-724271.1

DALLAS 936788_1  7309.1